[Civ. No. 5755.   Fourth Dist.   Dec. 9, 1958.]

VIRGINIA MAY LAWRENCE, Appellant, v. BENJAMIN LAWRENCE, Respondent.

Maher & Googooian for Appellant.

No appearance for Respondent.

COUGHLIN, J. pro tem.*—This is an appeal from a minute order denying a motion for change of custody of a minor child.

In July, 1951, as part of an interlocutory decree of divorce, Robert Sand Lawrence, a 2-year-old boy called "Sandy," was placed in the custody of his mother, the plaintiff. This order was maintained in force by the final decree of divorce entered July 24, 1952. A few months later, on October 3, 1952, by stipulation of the parties, "Sandy" was placed in the custody of his maternal grandfather, Floyd Coolidge, who lives in Bellflower, California. On August 4, 1955, after a hearing, this placement order was modified and custody was awarded to the defendant, the boy's father, who, in the meantime, had married. In April, 1956, the plaintiff, who had married shortly before that time, applied for a modification of the custody order, asking that her son be placed with her. This request for a modification was denied by an order which provided: "Custody will remain with the defendant. Plaintiff to have custody of minor child from June 21 to September 10 and be permitted to take the child to Colorado, if she desires. . . ." At that time the plaintiff was living in Aurora, Colorado, with her husband, a jet aircraft mechanic, who is a sergeant in the Marine Corps. Fourteen months later, the plaintiff made another application for modification of the custody order. In the meantime she had given birth to a boy, who, at the time of this application, was 5 months of age; had purchased a home and continued to live in Aurora, Colorado, with her husband. These facts were urged as a change in

*Assigned by Chairman of Judicial Council.

circumstances justifying a change in the prior order. After a hearing, held on July 2, 1957, the court denied the motion for modification by a minute entry, which reads: "The Court finds that there will be no change in the Court order." The plaintiff appeals from this order.

The evidence produced at the hearing shows that the defendant and his family, consisting of himself, his wife, and six children, live in Orange, California; four of the children are issue of the marriage between defendant and the present Mrs. Lawrence; one of them is her child by a prior marriage; and the sixth child is "Sandy," who was then 8 years of age. Sandy had been enrolled in a local school; his father and stepmother helped him each evening with his homework, which was particularly important because his academic progress was poor; on a number of occasions his stepmother visited the school and regularly attended parent-teacher conferences; at the end of his first grade it was recommended that he have the benefit of a summer school program in order to prepare him for the second grade. In June, 1956, upon completion of the first grade, Sandy went to live with the plaintiff in Colorado for the summer vacation. This visit was authorized by the court's order. Although the boy's mother was told of the teacher's recommendation, he was not sent to a summer school. When the vacation period was over, Sandy returned to his father's home and enrolled in the second grade, which he failed to pass. The school authorities again recommended summer school but, upon being advised of this recommendation, the plaintiff's husband indicated an intention not to let the boy go to summer school.

When Sandy returned from his mother's home in Colorado, after the 1956 vacation, he was a minor disciplinary problem, being rebellious, acting resentful toward and lacking respect for the family, but this cleared up in a short time.

On holidays and for a week before the recommended summer school session in 1957, the boy visited his maternal grandparents at Bellflower, staying at their home. A friendly relationship appears to exist between these grandparents and the boy's father. To the contrary, as noted by the trial court, obvious bitterness defines the relationship between plaintiff and the defendant.

With consent of all parties, the trial judge conferred with Sandy privately.

Prior to announcing his decision, the court orally made this statement: "I feel that a child should ordinarily be with its

mother, everything else being equal. In this case I feel that most of the things are equal with one exception: that it is a very bad thing to pass a child back and forth between parents if the child is happy [in] both places. He tells me that, of which I am sure that he is sincere. So, there will be no change in the order.''

The plaintiff contends that Sandy should have been placed in her custody under an application of the rule prescribed by section 138, subdivision 2, of the Civil Code, that "other things being equal, if the child is of tender years, custody should be given to the mother." It should be noted that the trial judge did not say he felt that *all* things were equal or *all other* things were equal in this case, but, rather, that *most* things were equal, with one exception. The court made no findings. None were necessary. (*Smith* v. *Smith*, 135 Cal.App.2d 100, 106 [286 P.2d 1009].) Under these circumstances any finding of fact essential to an affirmance of the order denying plaintiff's application for a modification, which is legally supported by the evidence, will be implied.

"On appeal it is, of course, the duty of this court to view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the successful party in the court below." (*Ducharme* v. *Ducharme*, 152 Cal.App.2d 189, 193 [313 P.2d 33].)

"An application for a modification of an award of custody is addressed to the sound legal discretion of the trial court, and its discretion will not be disturbed on appeal unless the record presents a clear case of an abuse of that discretion." (*Foster* v. *Foster*, 8 Cal.2d 719, 730 [68 P.2d 719]; *Munson* v. *Munson*, 27 Cal.2d 659, 666 [166 P.2d 268].) "All presumptions are in favor of the reasonableness of the decree, and in the absence of a showing that compels the conclusion that the decree should be modified, an appellate court cannot interfere with the trial court's refusal to modify it." (*Prouty* v. *Prouty*, 16 Cal.2d 190, 193 [105 P.2d 295].)

In determining whether "other things" are equal within the meaning of subdivision 2 of section 138 of the Civil Code the court must give primary consideration to the best interests of the child and, necessarily, is "allowed a wide latitude in the exercise of its discretion." (*Taber* v. *Taber*, 209 Cal. 755, 756 [290 P. 36]; *Munson* v. *Munson, supra*, 27 Cal.2d 659, 666; *Smith* v. *Smith, supra*, 135 Cal.App.2d 100, 103.) Important factors are the maintenance of a stable home life (*Fine* v. *Denny*, 111 Cal.App.2d 402, 404 [244 P.2d

983]; *Washburn* v. *Washburn*, 49 Cal.App.2d 581, 587 [122 P.2d 96]), and the disturbing effect which might result from a change of the child's established mode of living (*Fine* v. *Denny, supra,* 111 Cal.App.2d 402, 404; *Bemis* v. *Bemis,* 89 Cal.App.2d 80, 91 [200 P.2d 84]). Of course, these factors are related to the particular circumstances under consideration and an application of the general rule that the court must consider the best interests of the child. The trial judge gave due consideration to these matters in this case, as is clearly indicated by his statement that it was "a very bad thing to pass a child back and forth between parents."

However, contrary to appellant's contention, the court did not decide that in every case a motion to modify a custody order would not be granted because it involved a change of homes. The granting of the motion under consideration would have involved more than the mere change in a custody order. It would have involved a change in school; a change in disciplinary standards; a change in a family situation, removing the boy from a home where his interests and ideas would be stimulated by two boys slightly younger than he to a home with a 5-month-old baby; a change from an established family consisting of man and wife, married for five years, with four children, to a family consisting of man and wife, married for a year and a half, with one child; and a change involving the child's removal from the opportunity to have frequent contact with his maternal grandparents, who, prior to his father's second marriage, had been given sole custody of him.

Sandy had a particular school problem about which his mother and stepfather were unsympathetic or lacked understanding; he was enrolled in a school cognizant of this problem; and his father and stepmother made it a matter of their actual concern.

Appellant relies upon the case of *Bemis* v. *Bemis, supra,* 89 Cal.App.2d 80, in support of her contention that the order appealed from should be reversed. However, that case is readily distinguishable from the case at bar in that in the former the children actually had been living with their mother for a substantial period of time and the requested modification merely would have given legal effect to an actual status. In the instant case Sandy had not been in his mother's custody since he was 3 years of age, except for the summer vacation period in 1956.

The trial judge had the opportunity to see and talk to

Sandy and to see and hear his parents. These are additional reasons why an appellate court should hesitate to disturb the conclusion of the trial court. The evidence fully justifies its decision and there was no abuse in the exercise of its discretion. (*Booth* v. *Booth,* 69 Cal.App.2d 496 [159 P.2d 93]; *Fine* v. *Denny, supra,* 111 Cal.App.2d 402; *Scott* v. *Barnes,* 118 Cal.App.2d 271 [257 P.2d 700]; *Smith* v. *Smith, supra,* 135 Cal.App.2d 100.)

The order is affirmed.

Griffin, P. J., and Shepard, J., concurred.